1841.

Schermerhorn
v.
Barhydt.

---

SCHERMERHORN, executor, &c. *vs.* BARHYDT and others.

Where the creditor of a deceased debtor, previous to the adoption of the revised statutes, commenced an action against the four devisees of the decedent to recover his debt out of the lands devised to them respectively, in severalty, and the sheriff returned the writ served upon three of the defendants only and as to the other that he was not found, but the creditor, instead of taking out new process and having it served upon the last named defendant, proceeded as authorized by statute in the case of joint debtors, and took a judgment by default, and entered it up against all the defendants, and took out an execution thereon ; upon which execution the sheriff advertised and sold all the right and title of the defendants to a house and lot which had been devised in fee to the defendant who had not been served with process, and all their right and title to a pasture lot which had been devised to one of the other defendants for life, but the remainder in fee in which pasture lot had descended to all the defendants, and some others, as the heirs at law of the deceased debtor ; and the plaintiff in such judgment became the purchaser of the house and lot, and the devisee for life became the purchaser of the pasture lot at such sale ; *Held* that the sheriff's deed, under the judgment and execution, conveyed no right or interest in the house and lot, to the judgment creditor ; such judgment being wholly void and inoperative as to the lands or property of the defendant who was not served with process. *Held also* that, in equity, the amount bid upon that house and lot was not an extinguishment of any part of the plaintiff's debt which was originally due from the decedent ; it not appearing that the plaintiff, at the time of the sheriff's sale, was aware of the fact that by the will the defendants who had been served with process had no estate or interest in that part of the property of the testator. *Held further* that the purchase of the pasture lot, by the devisee for life who had a valuable interest therein to be affected by the sale, and who must be presumed to be cognizant of the terms of the will

under which he derived his title, was a satisfaction of the plaintiff's judgment and debt to the extent of the bid; although the plaintiff took the bond and mortgage of the purchaser for the amount of his bid, in lieu of the money.

Although a judgment by default against heirs or devisees previous to the revised statutes became a personal claim against them and their property generally, as well as a lien upon the estate descended or devised to them, the recovery of such a judgment against a part of the heirs or devisees, without an actual satisfaction thereof, was not in equity an extinguishment of the whole debt as against the other heirs or devisees; but only of so much thereof as the defendants in the judgment were equitably bound to pay as between them and the other heirs and devisees, and which could have been collected by the plaintiff under such judgment.

Where several devisees or heirs are bound to contribute equally, or rateably, towards the satisfaction of a debt due from the testator or intestate, if the creditor recovers a judgment against a part of such devisees or heirs for his whole debt, which judgment is a lien upon lands sufficient to satisfy the portion of the debt which the defendants in such judgment are equitably bound to pay, and then suffers his judgment to lie until the defendants therein have disposed of the property on which it was a lien and such lien is extinguished, the other heirs or devisees or their property, are not liable in equity to pay the creditor his whole debt, but only their rateable proportions thereof.

Under the provisions of the revised statutes, heirs and devisees who have not aliened any part of the property descended or devised to them cannot be charged personally for the debts of the testator or intestate; nor are they personally liable to contribution for the payment of such debts. The judgment or decree can only direct a satisfaction of their portion of the debt out of the estate so descended or devised.

Each creditor of the decedent, under the provisions of the revised statutes, is to proceed separately to recover a judgment or decree, to obtain a rateable proportion of his debt against the heirs or devisees respectively. And the defendants respectively, in their answers, may show that there are other unsatisfied debts of the decedent belonging to the same or to a prior class.

Where infants are defendants in a suit brought by a creditor of the decedent against heirs or devisees, a reference should be directed to enquire whether there are any other creditors belonging to the same class with the complainant or to a prior class; although the infants in their answers have not set up that fact as a defence pro tanto.

To entitle a creditor of the testator to file a bill against the devisees for the recovery of his debt out of the real estate devised, he must not only show that the personal estate was not sufficient to pay the debts, or that he has exhausted his remedy against the personal representatives of the decedent, but he must also show that the real estate which descended to the heirs at law was insufficient, or that he has exhausted his remedy against such heirs.

A creditor of the decedent cannot file a bill against the devisees jointly with the heirs, without averring therein that the real estate descended to such heirs was insufficient to pay the debts which remained after exhausting the remedy of the creditors against the personal estate.

1841.

Schermerhorn
v.
Barhydt.

Where the complainant comes into the court of chancery to enforce an equitable claim against heirs or devisees, which equity arises from transactions which have taken place subsequent to the death of the testator or intestate, it is not necessary that he should comply literally with all the requirements of the revised statutes relative to suits against heirs and devisees. It is sufficient if they are complied with in substance, so far as they are applicable to the case made by the bill and may affect the equitable rights of the complainant against any of the defendants.

March 16.        THIS was an appeal by James Barhydt, one of the defendants, from a decretal order of the vice chancellor of the third circuit. The object of the suit was to obtain satisfaction of a bond debt of about $700 which was due to W. Adams, the complainant's testator, from John J. Barhydt deceased, the father of the appellant, at the time of his death. John J. Barhydt died in December, 1813, possessed of considerable real estate, but not leaving sufficient personal property to pay his debts. He left four sons—James, Jeronimus, John S., and Henry, and two daughters—Alida Van Dyck, and Mary the wife of G. Clow, his only children and heirs. By his will he devised to his son James, the appellant, his brick house and lot in Green-street, in the city of Schenectady, and half a morgan of land adjoining the same; subject to the payment of £200 to Henry and to the use of the house by Henry for the term of two years. He also devised to Jeronimus two lots of land; and to John S., the upper half of his farm, about six miles from Schenectady, and the other half thereof to the son of John S.; and charged John S. with the payment of legacies to the amount of £500, to Henry and his two sisters and a daughter of one of the sisters. He also devised to Henry his pasture lot purchased of Maybie, containing about eleven acres; and the residue of his lot north and adjoining the land devised to the appellant. But the devises to Jeronimus and Henry contained no words of inheritance. Those devisees, therefore, only took life estates in their respective lots; and the reversion in those lots descended to the heirs at law of the testator. The son of John S. to whom the lower half of the farm was devised, died unmarried and intestate in 1817, leaving his father his heir at law.

After the death of John J. Barhydt, Adams commenced an action of debt upon his bond, in the supreme court, against the four sons, as devisees of the real estate of their father. The process was not served upon the appellant, who resided in another county; and the sheriff returned the writ, as to him, not found. The plaintiff proceeded, however, as if it had been a case of joint indebtedness, and took a judgment by default against all the defendants, in November, 1816, for the penalty of the bond, and for $27,15 damages and costs. An execution was issued on that judgment, upon which the sheriff advertised and sold all the right, title and interest of the defendants in the judgment, to the brick house and lot and half a morgan of land devised to the appellant, and the pasture lot of about eleven acres, which by the will was devised to Henry. Adams became the purchaser of the premises devised to the appellant, at the price of $200, and received the sheriff's deed therefor, on the first of May, 1822. And Henry Barhydt became the purchaser of the eleven acre pasture lot, for the sum of $500, and received the sheriff's deed therefor on the 7th of June, 1822. By an arrangement between Adams and Henry Barhydt, instead of receiving the money for the bid of the latter upon the execution of the sheriff's deed to him, Adams agreed to convey to Henry the lot purchased by the former at the sheriff's sale, and to take the bond and mortgage of Henry on both lots, conditioned for the payment of $1032; which was the whole amount of principal and interest due upon the judgment. This agreement was carried into effect, and Henry executed his bond and mortgage upon the two lots on the 7th of June, 1822; conditioned to pay the $1032 in two years from that date, with interest thereon annually.

Henry Barhydt died in November, 1824, without having paid any part of the principal or interest upon his bond and mortgage, insolvent and intestate, leaving eight children; all of whom were made defendants in this suit except his daughter Elizabeth, who had died intestate and without issue before the commencement thereof. In June,

1825, Adams filed a bill in this court against the heirs at law of Henry Barhydt to foreclose his mortgage ; in which suit he made James Barhydt a party defendant.   The appellant put in an answer to that bill, claiming one part of the mortgaged premises as belonging to him solely, as the devisee of his father, and the sixth part of the other lot as one of his heirs at law ; and insisting that the judgment, as to his interest in the mortgaged premises, as such devisee and heir, was wholly inoperative and void.   Adams thereupon paid the appellant's costs in the foreclosure suit ; but did not discontinue the suit as to any of the defendants therein.   In February, 1827, he made an ex parte application to the supreme court and obtained an order vacating the judgment ; and in 1828, he commenced a new suit on the bond against the surviving heirs and devisees of John J. Barhydt, and the heirs at law of his deceased son Henry, to obtain satisfaction thereof out of the estate devised or descended to them.   The appellant appeared and pleaded in bar of that suit the recovery of the former judgment against his three brothers upon the bond, in 1816.   And the supreme court having set aside the order vacating the judgment, Adams was compelled to abandon the second suit commenced by him upon the bond ; and he was non prossed therein as against the appellant, in November, 1828.   Adams having died, the complainant, as his executor, filed his bill in this cause, in December, 1831, against the surviving children of John J. Barhydt, and the surviving heirs of Henry Barhydt, stating these facts and praying relief in a great variety of forms ; and concluding with a prayer for general relief.   The appellant appeared and answered the bill ; and some of the children of Henry Barhydt who were infants, put in an answer by their guardian ad litem.   And as to the other defendants the bill was taken as confessed.

The answer of James Barhydt, the appellant, admitted that the personal estate of his father was not sufficient to pay his debts, as stated in the bill, and most of the other facts therein charged.   But he insisted that the judgment

was void as against him and the estate which came to him by devise or descent from his father; he not having been served with process and never having appeared in the suit in which such judgment was recovered. He also set out, in his answer, the several devises which his father made of the lands of which he died seized, describing the lands and the interest which he claimed therein as devisee or heir. He alleged that he had never been in possession of any of the lands devised or descended to him; but that he had filed a bill in this court against the other defendants, to ascertain and settle his rights as heir at law of his father, and to have a partition of such lands as he was entitled to an interest in as a tenant in common with them. And he claimed and insisted that the complainant was not entitled to equitable relief as against him, or the estate so devised or descended to him from his father. The cause was heard upon pleadings and proofs as to the defendants who had appeared and answered, and upon the bill taken as confessed as to the other defendants; but the defendant John S. Barhydt appeared by his counsel upon the hearing.

The vice chancellor declared and decreed the sheriff's sales, and the deeds under the same, and the bond and mortgage given to Adams by Henry Barhydt, to be absolutely void, and that they should be annulled and set aside. And he directed a reference to a master to compute the amount due to the complainant for the principal and interest on the original bond given to Adams by the appellant's father; and to ascertain the location, quantity, and value of the real estate of which John J. Barhydt died seized, and the amount of the incumbrances thereon, and to whom the same descended or was devised, and whether the same or any part thereof had been aliened by the heirs or devisees, and the separate value of each portion so descended or devised to the several heirs or devisees. The decree also directed the master to take and state an account of what might be due to other creditors of John J. Barhydt at the time of his death, whether by judgment, *mortgage*, or otherwise; and to ascertain whether any such

debts were still valid and subsisting claims against the estate. And the decree further directed the master to apportion the amount due to the complainant among the heirs at law of John J. Barhydt, in proportion to the value of the real estate descended to such heirs respectively, and to apportion the complainant's costs and the costs of the guardian ad litem of the infant defendants among such heirs in proportion to the debt which should be recovered against each ; that upon the confirmation of the master's report, the complainant should have execution against the heirs at law respectively for the amount of the debt and costs so recovered against each. The decree also contained a further provision that if the monies arising from the sale of the real estate descended to the heirs respectively, should be insufficient to pay the debt and costs, or in case of a deficiency arising from the alienation of any part of the lands descended and the inability of the complainant to collect the value of the estate so aliened, from the heir by whom such alienation was made, or of a deficiency arising from both causes, the complainant should be at liberty to apply to the court for further relief as to such deficiency against the devisees or the heirs at law or both ; and reserving to the several defendants the right to apply to the court to settle their respective rights and claims to contribution as between themselves.

*H. Bleecker*, for the defendant James Barhydt. The defendant James Barhydt not having been arrested in the suit against the devisees of John J. Barhydt on the bond mentioned in the pleadings, the judgment in that suit was absolutely void as against him or his estate, or any estate derived by him from John J. Barhydt, either as his heir or devisee. (5 *John. Rep.* 41. 15 *Id.* 141. 9 *Cowen*, 227, 229. 1 *Dunl. P.* 126. 1 *R. L.* 317, § 4. *Bac. Abr. title Heir and Ancestor, H.* 1 *Cowen*, 734. 2 *Id.* 569. *Id.* 71.) The judgment was an extinguishment of the bond. (1 *Wend.* 102.) The execution was not in pursuance of nor warranted by the judgment. And the sale under the judg-

ment of James Barhydt's property was utterly void. In so far as the judgment was valid against other persons than the defendant James Barhydt, it remains in force. Adams, the obligee, by proceeding on the bond, has elected to discharge the defendant James Barhydt and his property from all claim he or his representatives could have on the bond. And having obtained a judgment against such of the devisees as he chose to have arrested and made liable, his representative cannot now have any remedy in this court. Here was no mistake of fact. This court does not relieve parties from their acts fairly done on a full knowledge of the facts, though under a mistake of law. (*Lyon* v. *Richmond*, 2 *John. Ch. R.* 51. 4 *Id.* 566. *Cooper*, 276, 272. 2 *Mad.* 281. 2 *John. Ch. R.* 544. 3 *Id.* 351. 6 *Id.* 87.) No decree can be made in any way to affect the defendant or his estate, nor should he or his estate be charged with any costs of this suit. If the complainant could now have a remedy in this court, the bill does not contain the allegations and set forth the facts required by the revised statutes. The bill heretofore filed by William Adams against James Barhydt and the other defendants in the pleadings mentioned, not having been dismissed, this present suit cannot be maintained. (*Cooper*, 272, 276—270, 271. 2 *Sel. Pr.* 461. 3 *Black. Com.* 290.) The judgment on the bond was docketed in November, 1816. This bill was filed in December, 1830. Any new remedy is completely barred by the lapse of time and the consequent presumption, and by the statute of limitations, as adopted and applied in this court. (*Kane* v. *Bloodgood*, 7 *John. Ch. R.* 70, and the authorities cited in argument and by the chancellor in that case.)

The judgment obtained on the bond was a general judgment against all the defendants who were arrested, and was a lien on all their lands, and warranted an execution de bonis propriis against them, and there is nothing in the bill or proofs to show that since such judgment was obtained the plaintiff in the judgment might not by due effort and diligence have obtained satisfaction thereof from the

property real or personal of the defendants who were arrested on the mense process. The decision of the supreme court mentioned in the answer, (1 *Wendell*, 102,) must be considered as *res adjudicata*. The evidence of the belief of Adams concerning the effect of the deeds under the sale on the judgment is wholly insufficient, as it was impossible for the witness *to know* what Adams believed, and there is no proof of any misrepresentation or misinformation. In so far as the decree of the vice chancellor grants relief different from that prayed for, it cannot be sustained, as the prayer for general relief is in the conjunctive. (*Colton and others* v. *Ross and others*, 2 *Paige*, 396.)

*A. C. Paige*, for the complainant. The complainant is entitled to the relief granted by the vice chancellor, and his decree can be sustained as against all the defendants upon the ground of the mistake of the testator, William Adams; he supposing that the purchasers at the sheriff's sale were purchasing a fee simple, and being ignorant of the fact of the title of the defendant, James Barhydt, to the house and lot, and of the fact that the pasture lot on the death of Henry Barhydt passed to all the heirs of John J. Barhydt, in fee. This mistake was a mistake in fact; but if it was a mistake in law, it would furnish a ground of relief; as the rule in equity now is, that relief will be given where the mistake is one purely of law. This mistake, whether of law or fact, is admitted by all the defendants, except James Barhydt and the infant children of Henry Barhydt; and they in their answers do not deny it. (2 *McCord's Ch. R.* 463. 2 *Bailey, S. C. R.* 623. 1 *Hill. Ch. (S. C.)* 250. 16 *Ves.* 72. 1 *Ves. jr.* 126. 3 *P. Wms.* 320. *Moseley*, 364. 1 *Sim. & Stu.* 561. 4 *Little. Ken. R.* 127. 8 *Wheat.* 205, 216. 14 *John. R.* 526.) The ignorance of William Adams of the true state of the title is a sufficient excuse for his not commencing his first suit against all the heirs and devisees of John J. Barhydt. The complainant has a clear remedy in equity by analogy to the statute remedy, provided in cases of eviction in sec-

tion eleven, (1 *R. L.* 504,) as chancery in cases of concurrent jurisdiction follows the rules of law, and where it gains jurisdiction for one purpose, it will retain the bill generally. (10 *John. R.* 587. 7 *John. Ch.* 90. 3 *Id.* 129. 4 *Id.* 636. 1 *Sch. & Lef.* 429. 10 *Ves.* 460. 15 *Id.* 498.)

Chancery has jurisdiction of this case upon several grounds. It is a proceeding against heirs and devisees for the sale and distribution of the real estate descended and devised to pay the debts of the ancestor. It may be regarded as a bill to remove a cloud upon the title. It asks for relief upon the ground of mistake. The remedy at law is doubtful and difficult. Unless the complainant has a remedy in chancery, there will be a failure of justice. And the defendant, James Barhydt, is taking an unconscientious advantage of the peculiar circumstances in which the complainant is placed. The bill may be sustained as a bill of foreclosure. No objection can exist to a decree for the sale, in payment of the complainant's debt, of five-sixths of the pasture lot, and also of five-sixths of all the other lands of John J. Barhydt, deceased, which descended to his heirs at law, (being the shares of all his heirs except James Barhydt,) and also of all the lands of said John J., which were devised by him to his sons Henry, Jeronimus and John S. Barhydt; the said Henry, Jeronimus and John S. Barhydt having been arrested in the suit on the bond, and the bill having been taken as confessed against Alida Van Dyke and Gilbert Clow and wife, and the said Jeronimus and John S. Barhydt, and the adult heirs of Henry Barhydt.

If the complainant's remedy should only be against John S. and Jeronimus Barhydt, and the heirs of Henry Barhydt, still James Barhydt is a proper party, as they would in equity be entitled to contribution from him; and in order to avoid multiplicity of suits, it would be proper that the equities as between each other should be settled in this suit. (2 *Paige,* 84, 87, 92. 2 *John. Ch. R.* 397. 5 *Id.* 254. 1 *Id.* 409, 425.) The judgment on the bond, if not disturbed, is no bar to relief. A bill may be filed

against heirs and devisees upon a judgment for a debt of the ancestor ; and an heir or devisee not arrested in the suit at law, may be made a party to the bill in equity, and compelled to contribute to the payment of the complainant's debt, he not being discharged in equity, although he may be at law.   In equity the judgment is not, as to James Barhydt, an extinguishment or merger of the bond.   Besides, if the judgment interposed a technical difficulty in the way of justice, chancery has the power of setting it aside. (4 *John. Ch. R.* 619.   5 *Id.* 494.   2 *Atk.* 33.   10 *Ves.* 209, 227.   2 *Merv.* 36.   2 *John. Ch.* 508, 511.   2 *Id.* 397.   5 *Id.* 254.   18 *John. R.* 477.   6 *Id.* 98.   6 *Cranch,* 253.   4 *John. Ch.* 334.   6 *Id.* 21.   1 *Id.* 425.   5 *Paige,* 505.   18 *John. R.* 484.)   William Adams, after he discovered his mistake, sought his remedy at law, which was denied.   A court of equity is therefore now the proper and only court in which to obtain relief.   And the defendant James Barhydt, having put in an answer instead of demurring, cannot object that the complainant has an adequate remedy at law.   (2 *John. Ch.* 339.   2 *Pick.* 509.   17 *John. R.* 381.   6 *John. Ch.* 479, 90.   *Mitf.* 113.)   James Barhydt cannot object to a decree setting aside the execution, sheriff's sale, and all subsequent conveyances, as in his answer he alleges they are all inoperative, illegal and void.   The execution was not warranted by the judgment, and was therefore void, and the sheriff's sales, and sheriff's deeds, were consequently nullities.   (1 *Cowen,* 738.)   The bill contains all the necessary allegations required in a bill filed under the revised statutes by a creditor against heirs and devisees as to deficiency of personal estate ; a description of the real estate of which John J. Barhydt died seized, &c.   The will of John J. Barhydt mentions all his real estate, a copy of which is set out in the bill.   But beyond question, the bill contains every allegation required in a creditor's bill against heirs and devisees, by the law as it stood before the adoption of the revised statutes ; which law must govern this case.   (4 *John. Ch.* 647.   5 *Id.* 235.)   Even if the bids at the sheriff's

sale are to be deemed a satisfaction of so much of the judgment, there yet remains a balance due thereon of above the sum of four hundred dollars, for which James Barhydt is liable. As to this sum, therefore, he is a proper party, and is liable to pay his proportional share thereof. And he may even be compelled to contribute an amount to the payment of this sum equal to his full proportion of the whole debt. Only James Barhydt, one of the heirs and devisees, has appealed from the vice chancellor's decree : the decree cannot, therefore, be disturbed as to the other heirs and devisees ; but may be enforced as against them.

*J. Rhoades*, for John S. Barhydt.

THE CHANCELLOR. Cases seldom occur, even in this court, where such a complication of conflicting rights and entangled equities are presented as in the one which is under consideration upon this appeal. And the difficulty of properly settling and adjusting· them in this suit is considerably increased by the provisions of the revised statutes relative to the proceedings of creditors against heirs and devisees. It is not improbable, therefore, that I may have erred in some of the conclusions at which I have arrived, as to the legal and equitable rights of the parties to this bill ; as I think the vice chancellor has done in some of the provisions of the decree which is appealed from.

The case of *Jackson* v. *Hoag*, (6 *John. Rep.* 59,) and of *Whitaker* v. *Young*, (2 *Cowen's Rep.* 569,) have long since settled the point that the statute relative to proceedings against joint debtors, where a part of the defendants only are served with process, is not applicable to suits at law against heirs and devisees who are sued for debts due from the testator or intestate. And according to the decision in the first case, the sheriff's sale to Adams conveyed no right or interest whatever in the brick house and lot on Green-street, or in the half morgan of land which were devised to the appellant in fee. I am inclined to think, therefore,

that the amount bid by Adams upon that part of the property ought not in equity to be considered as a payment of any part of the debt due upon his judgment; and that the decree is right in setting aside that part of the sale, and the deed given by the sheriff in consequence thereof, as wholly inoperative and void.

Although it is at least doubtful whether any court can relieve against a mistake arising from mere ignorance of law, this court can relieve a party from the consequences of a mistake of fact. And there is room for doubt in this case whether Adams had seen the will of John J. Barhydt, at the time of the sheriff's sale, so as to be fully cognizant of the fact that the premises which he was purchasing had been devised in fee to that one of the defendants in the suit against whom the judgment, upon its face, was wholly inoperative, on the ground that the writ was returned, as to him, non est inventus. The statute which was then in force, authorizing the supreme court to relieve certain purchasers at sheriffs' sales who should be afterwards evicted from the lands purchased on account of irregularities in the proceedings, or want of title in the person against whom the execution issued, (1 *R. L. of* 1813, *p.* 594, § 11,) does not appear to have contemplated the case of a purchase by a party to the judgment; who is presumed to be cognizant of the proceedings which have been had in the suit. But the principle of that statute was wholly inconsistent with the idea that a sale of land in which the parties to the judgment had no estate or interest whatever, and which had been bid in by the plaintiff in the judgment under a misapprehension of the fact, should in equity be considered as a payment of the judgment, to the extent of such bid. In *Lansing* v. *Quackenbush,* (5 *Cowen's Rep.* 38,) the supreme court refused to interfere in such a case upon motion; saying that the proper forum to apply to for relief was a court of equity. Subsequent to the commencement of the present suit, however, the supreme court has decided that it will relieve the plaintiff in such cases, on special motion. (*See Mulks* v. *Allen,* 12 *Wend.* 253.)

So far, however, as relates to the property purchased by Henry Barhydt under the execution, there is no ground whatever for setting aside the sale ; as there is no allegation in the complainant's bill that the purchaser in that case was not fully aware of the situation of the property and the rights of the several defendants in the judgment therein. And the subsequent arrangement between him and Adams, by which the latter took a bond and mortgage for the full amount of the judgment, instead of requiring payment of the bid when the property was conveyed by the sheriff to the purchaser, could not prevent that purchase from operating in favor of the other defendants as a satisfaction of the judgment *pro tanto*. Although the judgment was void as against the property of James Barhydt, who was not served with process, it was nevertheless a valid judgment as against his three brothers ; each of whom had a valuable interest in the premises bid in by Henry and conveyed to him by the sheriff. In addition to his own life estate in the eleven acre pasture lot, under the will of his father, Henry was entitled to a remainder in fee in one-sixth of the premises after the termination of such life estate, as one of the heirs. And his brothers John S. and Jeronimus were each entitled to a similar remainder in fee in one-sixth of the premises, as heirs at law. All those interests were vested in Henry, by the sheriff's deed to him, and the complainant has a valid and subsisting claim thereon which he can enforce by a sale under the mortgage. The part of the decree therefore which sets aside the sale to Henry, and the conveyance by the sheriff to him, and the mortgage of the interest which he thus acquired therein, was erroneous and must be reversed. And the judgment must be deemed to be satisfied to the amount of Henry's bid of $500, from the time of the sheriff's sale to him ; after deducting from such bid the sheriff's fees on the execution. The title to the other three-sixths of that lot, subject to Henry's life estate therein as devisee, was in the appellant and his two sisters, as heirs at law of their father, and was not affected by the sheriff's sale.

The judgment recovered upon the bond in 1816, having been recovered upon the default of the defendants who were served with process therein, was not only a valid lien upon all their interests in lands which had come to them by devise or descent from their father, but it became also a personal debt against each of them, so as to create a valid lien upon any other real estate which they or any of them owned at the time of the docketing of that judgment. The appellant, therefore, insists that the recovery of that judgment extinguished all claim against him, upon the bond, as one of the heirs of the obligor to whom assets had come by descent and devise. Such was undoubtedly the effect of that judgment at law. And if the complainant or his testator has lost his remedy under that judgment, by neglecting to proceed to collect the judgment against those defendants or their property, or has suffered them to sell or incumber their lands which ought to have been levied upon and sold under execution while the judgment was a valid lien thereon, neither the appellant, nor the property which has come to him from his father by devise or descent, can be liable in equity to make good the loss, beyond his proportionate share in reference to the property which came to him as one of the heirs. That part of the decree which authorizes the complainant to apply for further relief against the parties who have contributed their full shares towards the satisfaction of the debt, in case there shall be a deficiency arising from alienation or otherwise in paying the shares of other parties, is unquestionably erroneous as respects the appellant. That provision of the decree also appears to be inconsistent with the statute on the subject of proceedings against heirs and devisees. (2 *R. S.* 455, § 52.)

But if the whole amount of the debt due from the ancestor of the defendants had been paid by the three sons against whom the judgment was recovered, or either of them, the defendant who had thus paid the whole debt would have been entitled to call upon the other heirs at law for contribution, in proportion to the value of the lands which each had received by descent, not exceeding

the actual value of such lands. For this reason I think the recovery of the judgment against a part of the heirs, without actual satisfaction thereof, except as to the $500 bid upon the sale to Henry Barhydt, was not, in equity, a discharge of the whole debt as against the other heirs of the obligor in the bond.

A similar remark may be made in reference to the objection that the giving of the bond and mortgage by Henry Barhydt, for the whole amount of the debt and costs, was a novation, or extinguishment of the original indebtedness. As Henry was one of the debtors, who by suffering a general judgment to pass against him without showing the particular property which had come to him by devise or descent had become personally liable for the payment of the whole debt, a payment of the bond and mortgage by him would undoubtedly have been a satisfaction of the judgment at law as well as in equity ; so far as the rights of the judgment creditor were concerned. But as Henry stood in the situation of a mere surety for the other heirs and devisees, so far as the property which they had received by descent or devise was bound to contribute for the payment of the debt due to Adams, if he had paid the bond and mortgage in full he would have been entitled to claim contribution, against such heirs and devisees, even at law. And in equity he would have been subrogated to all the rights and remedies of the original creditor against the other heirs and devisees, and the property devised or descended to them, to that extent, as well as against his co-defendants in the judgment who had also become personally liable to the plaintiff in that judgment. (*Cuyler* v. *Ensworth*, 6 *Paige's Rep*. 32. 1 *Story's Eq*. 477, § 499.) This principle of equitable substitution is distinctly recognized and adopted by the legislature in the provisions of the revised statutes relative to contribution between several persons, whose lands are bound by a judgment. (2 *R. S.* 376, § 72.) As the bond and mortgage in this case were not in fact valid and available securities for the whole amount of the judgment, and Adams took such bond and

mortgage under a misapprehension of fact as to the lien of the judgment upon the brick house and lot on Green-street, I think in equity his executor has a subsisting claim against the other heirs and devisees, or rather against the lands descended or devised to them, for their proportions of the original debt which was not satisfied by the sale to Henry Barhydt of his life estate in the pasture lot, and of the remainder in fee of himself and his co-defendants in the same premises, which passed under the sheriff's deed to him. And as John S. Barhydt and Jeronimus Barhydt were personally liable to Adams upon the judgment, they may in equity be liable for any deficiency which may exist after applying the assets which came to the hands of all the heirs and devisees of John J. Barhydt, to the satisfaction of the debt. But in no event can the appellant or his two sisters, if they had not aliened the estate which came to them from their father at the time of the commencement of this suit, have a personal decree against them; nor can they be liable to contribution personally. For the statute is explicit, that if it appears that the lands, tenements, or hereditaments descended to an heir were not aliened by him at the commencement of the suit, the court shall decree his proportion of the debt to be levied of the real estate so descended to him; and not otherwise. (2 R. S. 454, § 47. 7 Paige's Rep. 361.) It does not appear from the pleadings and proofs in this case that none of the lands descended to the appellant or his two sisters as heirs at law of their father had been aliened before the filing of the complainant's bill; though it may perhaps be fairly inferred from the appellant's answer that his interest in the lands descended to him had not been thus aliened. I, therefore, see nothing improper in that part of the decree which directs the master to ascertain and report upon that subject. But the decree should in terms have directed, that if it appeared from the report of the master that they had not aliened, the execution should go against the lands descended to them respectively, for their proportions of the debt; and not against them personally, or against their other property.

I think the decree was also erroneous in directing the master to take and state an account of all subsisting debts due to other creditors of the estate of John J. Barhydt; as subjecting the parties to an unnecessary expense. The revised statutes contemplate a proceeding by each creditor of the decedent separately, against his heirs, to obtain satisfaction of the debt, or the proportion thereof for which the heirs respectively are liable, after satisfying all legal priorities, and the proportionate claims of other creditors belonging to the same class. (6 *Paige's Rep.* 259.) When such a suit therefore is commenced against the heirs, the defendants may show by their answers that there are other unsatisfied debts of the decedent belonging to the same or to a prior class. And in that case the decree against each heir is only to be for such portion of the debt as will be equal to the value of the estate descended, after satisfying prior claims thereon and a proportionate part of the debts of the same class. (2 *R. S.* 454, § 39, 40.) Or if a defendant has paid any debt of the same class, or debt which was entitled to priority, he may set up that defence to the suit *pro tanto*. Even in such cases the decree should only direct an inquiry as to the subsisting debts, or the debts which have been paid by the heirs of the same class, or of a higher class than that of the complainant in the suit; so as to enable the court to determine the portions of the debt for which the several heirs are still liable, in reference to the value of the real estate descended to them respectively. As some of the defendants in this suit were infants, such an inquiry might have been proper, although no such defence was stated in their answers, or in the answer of the appellant; if such infants had not been the representatives of one of the defendants in the judgment, who by suffering such judgment to be rendered against him by default had rendered himself and his estate absolutely liable to the complainant for the payment of the whole debt, without reference to the amount of property he had received from his father.

In the case of *Butts* v. *Genung*, (6 *Paige's Rep.* 254,)

I had occasion to examine the provisions of the revised statutes relative to proceedings in this court against heirs and devisees, to enforce their legal liabilities to pay the debts of the intestate or devisor in respect to the lands descended or devised. I there came to the conclusion that it was no longer allowable for a creditor to file his bill against the personal representatives, and the heirs and devisees of the decedent jointly, either for the recovery of his own debt, or for the benefit of all other creditors who might think proper to come in under the decree. And that to entitle the complainant to obtain a decree against the heirs, or devisees, he must show by his bill that the personal estate of the decedent was not sufficient to pay his debts originally ; or that that the complainant had exhausted his remedy against the personal representatives without being able to obtain satisfaction of his debt. This construction of the statute was founded, in part, upon the section which declares that the heirs shall not be liable for any debt of the intestate unless it shall appear that the personal assets of the deceased were not sufficient to pay and discharge the same, or that after due proceedings before the proper surrogate's court, and at law, the creditor had been unable to collect his debt, or some part thereof, from the personal representatives of the deceased, or from his next of kin or legatees. (2 *R. S.* 452, § 33.) The statute also contains a similar provision in reference to the liability of devisees ; which declares that they shall not be liable unless it shall appear that the personal assets of the testator, and the real estate which descended to his heirs, were insufficient to discharge the debt ; or unless it shall appear that after due proceedings before the proper surrogate and at law, the creditor has been unable to secure such debt, or some part thereof, from the personal representatives of the testator, or from his next of kin or legatees, *or from his heirs.* (2 *R. S.* 455, § 56.)

One section of the statute requires the heirs to be prosecuted jointly by the creditor, for the debt of the decedent ; and another section declares that devisees shall be liable in

the same manner and to the same extent as heirs. But there is nothing in the statute which, even by implication, authorizes the commencement of a joint suit against heirs and devisees; and without any averment in the bill that the real estate of the testator which had descended to the heirs at law was insufficient to pay the complainant's debt.

In framing these provisions of the revised statutes, the revisers may not have intended to change the form of proceedings in this court against the heirs and devisees. For by referring to their notes, it will be seen that these statutory proceedings, as originally reported, were intended to apply to *actions at law*, against heirs and devisees. (2 *R. S. 2d ed. App.* 752.) But when the legislature changed these provisions as reported by the revisers, so as to make them applicable to such suits in this court, and prohibited the bringing of actions at law against heirs and devisees, this court became bound to carry into effect the will of the legislature thus expressed. The proceedings in this court, in such cases, must therefore be in conformity to these statutory regulations; although the effect of the statute, when applied to suits against heirs and devisees in this court, is not only to increase the number of separate suits, but also to make the remedy of the creditor in each suit more complicated and expensive than it would have been under the former practice here.

This, however, is not an ordinary bill to obtain payment of a subsisting legal demand against the estate of the decedent, according to the original rights of the parties as they existed at his death. But the complainant comes into this court for relief upon a state of facts which renders his claim against some of the defendants purely equitable. It would therefore be wrong to compel him to conform strictly to the requirements of these statutory regulations in matters of form merely. It is sufficient if they have been complied with in substance; so far as they are applicable to this case, and may affect the equitable rights of the complainant as against any of the defendants. I shall not, therefore, dismiss the bill, even

as to the claim against the appellant as a devisee of the house and lot and half morgan of land in Green-street.

It only remains therefore to modify the decree of the vice chancellor, according to my views of what is just and equitable between the parties under the peculiar circumstances of this case. The following must be substituted for the decree of the vice chancellor, which is reversed and modified accordingly, without costs to either party on the appeal :

*1st.* *Declare* that the judgment was inoperative and void as against the appellant and his estate ; and that the sale and conveyance by the sheriff to Adams of the property devised to the appellant was a nullity, and conveyed no title to the purchaser, and was not, in equity, a satisfaction of any part of the judgment. And *decree* that the sheriff's sale and conveyance, and the subsequent deed to Henry Barhydt from Adams and so much of the mortgage as includes those premises, be annulled and set aside.

*2d.* *Declare* that by the will of the testator, Henry Barhydt took an estate for life only, under the will, in the pasture lot bought of Maybie ; and that the remainder in fee in that lot, subject to such life estate, descended to him and his other five brothers and sisters in equal shares, as the heirs at law of the testator John J. Barhydt ; that the sale of that lot by the sheriff, and the conveyance thereof, was valid and effectual to transfer to the purchaser such life estate, and the interests of Henry, John S. and Jeronimus in the remainder of the fee as such heirs ; that such sale was a satisfaction of the judgment upon the bond, to the extent of the bid of $500, less the sheriff's fees on that sale, from the time when the property was sold and bid off by Henry ; and that the mortgage to Adams is a valid and subsisting security upon the interest in that property thus acquired under the sheriff's deed, for the amount of the $500 and interest thereon from the time when the property was struck off to the mortgagor by the sheriff. *Direct* a reference to a master to compute amount due, upon that principle, and *decree* a sale, in the usual form, of the undi-

vided moiety of the lot thus acquired under the sheriff's sale, to satisfy the amount reported to be due, upon the coming in and confirmation of the master's report. Or, if the complainant prefers it, the decree may merely declare his rights under the mortgage, and leave him to proceed upon the foreclosure bill previously filed against the heirs at law of Henry.

3*d. Declare* that the residue of the judgment is a subsisting claim in equity against the lands, or any future, contingent, or reversionary interest in lands, which descended to the children of John J. Barhydt, deceased, as his heirs at law; but that in ascertaining the value of the lands thus descended, and which are liable to contribute for the payment of the balance still due, the three-sixths of the remainder in fee in the pasture lot which were legally transferred to the purchaser under the sheriff's deed, should not be taken into account; that the lands which thus descended, and which are liable to contribution for the satisfaction of such balance, are the remaining three-sixths of the remainder in fee in the pasture lot which descended to the appellant and his two sisters, the remainder in fee in the lot which by the will was also devised to Henry for life only on the north end of the lot devised to the appellant, and the remainder in fee, after the termination of the life estate of Jeronimus, in the two lots devised to him, in which two lots Jeronimus only took a life estate under the will of his father.

4*th. Declare* that if the value of the estate so descended to the heirs of the decedent is not sufficient to satisfy the balance due on the judgment, the devisees of the testator are bound to contribute rateably towards the satisfaction of the deficiency in proportion to the value of the lands, or the interests therein, which were devised to them respectively, at the death of their testator; but that the interest of Henry in the pasture lot from the time when the same was sold under the judgment, is not to be taken into the account in ascertaining the interests in the lands devised which are thus liable to contribution. And that the lands

and interests in lands devised, which were thus bound to contribute are as follows : *First.* The value of the term of two years devised to Henry in the brick house and lot in Green-street, and of his life estate in the lot north of the property devised to the appellant, according to the principles of life annuities, and of his interest in the pasture lot from the death of the testator down to the time of the sheriff's sale. *Second.* The value of the interest devised to the appellant in the brick house and premises on Green-street, subject to the term of two years therein devised to Henry, and also subject to the payment of the legacy of £200 charged thereon. *Third.* The value of the life estate of Jeronimus, in the two lots devised to him for life, at the time of the death of the testator, upon the principles of life annuities. *Fourth.* The value of the upper half of the farm devised to John S. subject to the charge thereon of the several legacies to his brother and sisters and niece. And *fifth.* The value of the lower half of the farm devised to the son of John S. in fee, according to the decision of the court for the correction of errors upon the construction of this will.

*5th. Direct* a reference to a master to ascertain the value of the real estate descended to each of the defendants as an heir of John J. Barhydt as aforesaid, or to the heirs of such heir, and to compute the amount remaining due to the complainant upon his judgment, and to apportion the same and the taxed costs of the complainant, except his costs as to the foreclosure and sale of the mortgaged premises, among the heirs and representatives of heirs according to the value of the lands liable to contribution ; and to ascertain and report whether any and what part or parts of the lands thus liable to contribution had been aliened previous to the commencement of this suit, and by whom. And if the value of the lands of the heirs so liable to contribute is not sufficient to pay the whole amount due upon the judgment, and costs as aforesaid, then the master is to ascertain the value of the lands and interests in lands devised, and ap-

portion the residue of the debt, accordingly, among the devisees and representatives of devisees.

*6th. Declare* that if the lands and interest in lands descended and devised shall not be sufficient to pay the complainant's debt and costs, or if the complainant shall not be able to obtain satisfaction of any part of such debt and costs in consequence of the insolvency or otherwise of any defendant or other person who was bound to contribute, and who had rendered himself personally liable by the alienation of his estate, or otherwise, then the defendants John S. Barhydt and Jeronimus Barhydt, who are personally liable to the complainant for the payment of the whole of the balance due on the judgment, must make good the loss.

*Lastly. Decree* that upon the confirmation of the master's report, the complainants have execution for the amounts due from the defendants respectively for debt and costs apportioned against them ; such execution to be special against the lands descended or devised, as to the defendants who have not become personally liable by the alienation of the lands descended or devised. But as to the defendants John S. Barhydt and Jeronimus Barhydt, who are personally liable in consequence of the recovery of the judgment, and as to any other defendant who shall appear by the master's report to have rendered himself personally liable by the alienation of the lands descended or devised, the execution may be general, or both general and special. The complainant must pay the costs of the guardian ad litem, for his services as such guardian for the infants during their minority, but not afterwards; and the amount to be thus paid may be taxed with the complainant's costs. The heirs at law of Henry are not however to be made personally liable beyond the amount or value of the lands descended to them from him.